UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | Case No.: 11-CV-01333-LHK |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. | |
| PETE BE, et al., | |
| Defendant. | |

The Clerk of the Court entered default against Defendant Pete Be, individually, and as an officer, director, shareholder, and/or principal of Da Kine Café Inc., d/b/a Da Kine Café and Da Kine Café, Inc. ("Defendant"), after Defendant failed to appear or otherwise respond to the Summons and Complaint within the time prescribed by the Federal Rules of Civil Procedure. *See* ECF No. 22 at 1. Before the Court is Plaintiff Joe Hand Promotion, Inc.'s motion for default judgment. *See* ECF No. 24, 24-1. Defendant, not having appeared in this action to date, has not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument. Accordingly, the October 27, 2011 hearing on this motion is vacated. For the reasons discussed below, Plaintiff's motion for default judgment is GRANTED.

# I. BACKGROUND

Plaintiff is a distributor of sports and entertainment programming, and alleges that it owns commercial distribution rights to broadcast the program "UCF 119: Mir v. Cro Cop" ("Program"), originally broadcast nationwide on September 25, 2010. *See* Compl. ¶ 14. Plaintiff alleges that the Program was unlawfully intercepted and exhibited by Defendant at his commercial establishment, Da Kine Café, which is located in Sunnyvale, California. *Id.* at ¶ 9. On March 21, 2011, Plaintiff filed this action for violation of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as violations of California law against conversion. In the pending motion for default judgment, however, Plaintiff seeks damages only under § 605[1] and for conversion.

As it has in countless similar actions filed around the country, Plaintiff requests the maximum $10,000 available in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and the maximum $100,000 available in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). *See* ECF No. 24-1 at 8, 13. With respect to its conversion claim, Plaintiff seeks $1800.00, "the amount Defendant would have been required to pay had he ordered the [Program] from Plaintiff."[2] *See id.* at 19. Plaintiff also seeks $1038.98 in costs and $3,962.50 in attorneys' fees pursuant to 47 U.S.C. 605(e)(3)(B)(iii). *See id.*

# II. LEGAL STANDARD

The Clerk of the Court may enter default if the defendant has "failed to plead or otherwise defend" within the permitted time. Fed. R. Civ. P. 55(a). Once the clerk enters default, all well-pleaded allegations regarding liability are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). This is because the plaintiff must still

---

[1] This Court has held that "where liability exists under both sections 553 and 605, the district court should impose damages pursuant to section 605 instead of imposing the lesser damages available under section 553." *Kingvision Pay-Per-View v. Guzman*, No. 09-00217, 2009 WL 1475722, at *2 (N.D. Cal. May 27, 2009) (Breyer, J.).

[2] This request for conversion damages conflicts with other assertions made by Plaintiff that Defendant should have paid a sublicensing fee of $900 or $1,100 based on its occupancy rate. *See, e.g.*, ECF 24-1 at 4.

2

Case No.: 11-CV-01333-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

establish the relief to which it is entitled. *Id.* at 906. Entry of judgment by default is subject to the court's discretion. *See Lau Ah Yew v. Dulles*, 236 F.2d 415, 415 (9th Cir. 1956) (holding that trial court did not abuse its discretion in denying a motion for default judgment). Therefore, a defendant's default does not automatically entitle plaintiff to judgment. *See, e.g.*, *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (affirming district court's denial of motions for default judgment where the moving party could not show prejudice as a result of delays).

When a court is considering whether to enter a default judgment, it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Satisfied of its subject matter jurisdiction (federal statutes 47 U.S.C. § 553 and § 605 are at issue) and personal jurisdiction (Defendant resides and does business in California), the Court shall proceed to review Plaintiff's motion for default judgment.

### III. DISCUSSION

**A. Default Judgment is Proper Because *Eitel* Factors are Met.**

In exercising its discretion to enter default judgment, the Court may consider:

> "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."

*Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Joe Hand Promotions, Inc. v. Burleson*, No. 11-00499, 2011 WL 4905631, at *2 (E.D. Cal. Oct. 14, 2011). Applying the *Eitel* factors to the instant case, the Court finds that default judgment is proper.

First, the Court recognizes the possibility that Plaintiff will be prejudiced if default judgment is not entered against Defendant. Denying judgment against a defendant who does not participate in litigation deprives the plaintiff of a remedy until such time as the defendant chooses to litigate. *See*, *e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) ("[W]here a defendant's failure to appear makes a decision on the merits impracticable, if not impossible, entry of default judgment is warranted.") (internal quotations omitted). Thus, the first factor weighs in favor of granting of default judgment.

3

Case No.: 11-CV-01333-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Next, Plaintiff has satisfied the second and third *Eitel* factors by showing it is entitled to relief under 47 U.S.C. § 605 and for conversion. To state a claim for a violation of Section 605, the plaintiff must plead that the defendant received, assisted in receiving, or transmitted the plaintiff's satellite transmission without authorization. *See DirecTV, Inc. v. Webb,* 545 F.3d 837, 844 (9th Cir. 2008) (satellite television signals are among the "communications" protected by the Communications Act, prohibiting unauthorized receipt and use of radio communications for one's own benefit or for benefit of another not entitled thereto). Plaintiff asserts that it "was granted the right to distribute the [Program], including all undercard bouts and the entire television broadcast . . . via closed circuit television and via encrypted satellite signal." Compl. ¶ 14. Plaintiff also alleges that Defendant willfully and unlawfully intercepted the Program at the time of its transmission at his commercial establishment in Sunnyvale, California. Comp. ¶¶ 9, 17. Thus, Plaintiff has adequately set forth a claim under Section 605.

The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful disposition of the property right of another; and 3) damages. *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff alleges ownership of the distribution rights to the Program, misappropriation of those rights by Defendant's unlawful interception, and damages. Compl. ¶¶ 14, 25, 32. Plaintiff has therefore also sufficiently stated a claim for conversion.

In analyzing the fourth *Eitel* factor, the sum of money at stake, "the Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. 06-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Default judgment is disfavored when a large sum of money is involved or the damages sought are unreasonable in light of the defendant's actions. *See id*. Where a plaintiff's request for damages is excessive, the court may mitigate the impact of this factor by reducing the amount awarded. *See*, *e.g.*, *Joe Hand Promotions, Inc. v. Burleson*, No. 11-00499, 2011 WL 4905631, at *4 (E.D. Cal. Oct. 14, 2011). Here, the Court finds Plaintiff's request for $100,000 in enhanced damages unreasonable in light of the circumstances of the case.

*See id.* However, because, as discussed below, the Court awards Plaintiff a substantially smaller sum, this factor does not weigh strongly against the entry of default judgment.

The remaining *Eitel* factors also support default judgment. There is no genuine issue of material fact because the allegations in the complaint are taken as true, *see id.*, at *4, there is no evidence that Defendant's failure to participate in the litigation is due to excusable neglect, and the policy favoring decision on the merits generally weighs strongly in favor of entering default judgment, *see* Fed. R. Civ. P. 55(a).

The Court therefore finds that default judgment is appropriate in this case.

**B. The Court Awards Statutory Damages under Section 605(e)(3)(c)(i)(II)**

Section 605(e)(3)(c)(i)(II) provides that an aggrieved party may recover a sum of not less than $1,000 and not more than $10,000 for each violation of Section 605(a), as the Court considers just. "A traditional method of determining statutory damages is to estimate either the loss incurred by the plaintiff or the profits made by the defendants." *Joe Hand Promotions v. Kim Thuy Ho*, No. C-09-01435 RMW (N.D. Cal. Sept. 18, 2009) (citing cases).

The loss incurred by the plaintiff may be estimated by calculating a hypothetical lost licensing fee. *See id.* Here, Plaintiff alleges that its commercial sublicense fee is based on the sublicensing establishment's maximum capacity. *See* ECF No. 24-1, Ex. A-3 ("Rate Card"). Plaintiff offered evidence that the Da Kine Café's capacity was seventy-five persons, and that a commercial license of the Program would therefore have cost Defendant $1,100. *See* Affidavit of Joe Hand, Jr., President of J&J Sports Productions, Inc., Exh. 1 at 3 ("Hand Affidavit"); *see also* Affidavit of Investigator Tad Whitaker, Ex. A-2 ("Whitaker Affidavit"). However, Plaintiff also submitted conflicting evidence that the establishment's capacity was fifty persons. *See* Affidavit of Investigator Antonio Villalobos, Ex. A-2 ("Vollalobos Affidavit") ("In my opinion, the approximate capacity of this establishment is **50** people") (emphasis in original). An establishment with a 50-person capacity would have been charged $900 for the Program, not $1,100. *See* Rate Card.

As to Defendant's profits, Plaintiff submits evidence that up to 38 patrons were present at Da Kine Café at the time the Program was shown, but that there was no cover charge. *See*

1  Villalobos Affidavit, ECF No. 24-1, Ex. A-2.  Because there is no evidence of how much

2  Defendant made during the unlawful exhibition of the Program, the Court shall base statutory

3  damages on the cost of a hypothetical commercial license for an establishment with a 50-person

4  capacity (the lower of the two estimates submitted by Plaintiff): $900.  *See id.*  The $900 amount,

5  however, is below the $1,000 statutory minimum allowed under Section 605.  Accordingly,

6  the Court finds that Plaintiff is entitled to $1,000 in statutory damages.

### C. The Court Awards Enhanced Damages under Section 605(e)(3)(C)(ii)

Enhanced damages of up to $100,000 are available under Section 605 when the violation was committed willfully and for the purpose of commercial advantage or private financial gain. *See* 47 U.S.C. § 605(e)(3)(C)(ii).  In this case, there is no evidence that Defendant advertised the fact that the Program would be shown, charged a cover, or had a minimum purchase requirement.  Nevertheless, according to Plaintiff's investigators, there were three televisions displaying the Program during regular business hours, indicating that Defendant's use of the Program served some commercial purpose.  *See* Whitaker Affidavit; Villalobos Affidavit.  Plaintiff also submits that the broadcast was encrypted, and thus Defendant "must have undertaken specific wrongful actions" to intercept the Program.  *See* ECF No. 24-1 at 4.  These facts suggest that Defendant acted willfully for commercial advantage and private financial gain.

The $100,000 maximum, however, is not warranted under these circumstances.  Plaintiff offers no authority supporting a damage award of this magnitude where the Defendant is not a repeat offender.  *Compare J & J Sports Production, Inc. v. Ferreyra*, 2008 WL 4104315 (E.D. Cal. 2008) (Mueller, Magistrate J.) (maximum enhanced damages imposed under § 605 because defendant was a repeat offender, but statutory damages under § 553 and conversion denied as cumulative); *see also Joe Hand Productions, Inc. v. Streshly*, 655 F. Supp. 2d. 1136, 1139 (S.D. Cal. 2009) ("[T]he Court will not . . . indulge Plaintiff's attempt to obtain the biggest judgment it can by filing cookie-cutter pleadings that trivialize the particular facts of this case and ignore the voluminous case law that reveals its requested judgment [of $100,875] to be so wildly out of the question").  Courts in this District have found a $5,000 enhancement proper where there was a modest number of patrons and the Defendant imposed a cover charge.  *See, e.g.*, *Garden City*

6

*Boxing Club, Inc. v. Lan Thu Tran*, 2006 U.S. Dist. LEXIS 71116, at *5-6 (N.D. Cal. Sept. 20, 2006) (Whyte, J.) (awarding $1,000 in statutory damages and $5,000 in enhanced damages when 40 patrons were present and a $10 cover charge was imposed).

Here, there were between 30 and 38 patrons present, and Defendant did not impose a cover charge. *See* Whitaker Affidavit; Villalobos Affidavit. Plaintiff does not submit any evidence that Defendant is a repeat offender. Under these circumstances, an additional $1,000 is a reasonable enhancement.

### D. The Court Awards Damages for Conversion

Plaintiff also seeks $1800 in damages for conversion under California Civil Code § 3336. *See* ECF No. 24-1 at 19. While a claim for conversion generally lies only where the property allegedly converted is tangible, "courts in recent years have significantly relaxed this rule." *Don King Productions/Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995); *DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (granting plaintiff's motion for summary judgment for violations of 47 U.S.C. § 605, conversion, and other federal statutes, after first noting that "[c]onversion is generally applied to tangible property," but "courts have relaxed this requirement"); *but see J. & J. Sports Productions, Inc. v. Kigo*, No. 10-05512, 2011 WL 3418394, at *2 (N.D. Cal. Aug. 4, 2011) (denying copyright and conversion claims against an establishment owner for the unauthorized showing of a boxing match while emphasizing that California state and federal courts have reached different conclusions as to whether conversion applies to intangible property not merged with or reflected in something tangible). Some courts have also denied recovery for conversion as "cumulative" where statutory damages were already awarded. *Pahnke*, 405 F. Supp. 2d at 1193 (having already awarded $10,000 in statutory damages under § 605, the court denied plaintiff's additional request for damages of $50,000 for conversion as "cumulative and excessive"); *see also Kingvision Pay-Per-View v. Guzman*, No. 09-00217, 2009 WL 1475722, at *3 (N.D. Cal. May 27, 2009) (Breyer, J.) (granting default judgment and total statutory damages of $8,000 under § 605, while dismissing § 553 and conversion claims); *but see Joe Hand Promotions, Inc. v. Burleson*, No. 11-00499, 2011 WL 4905631, at *7 (E.D. Cal. Oct. 14, 2011) (awarding damages for statutory and conversion claim in default judgment). While acknowledging

7

that the law on this issue is unsettled, the Court finds that Plaintiff's well-pleaded claim for conversion justifies an award of damages.

Damages for conversion are based on the value of the property at the time of conversion. *See Arizona Power Corp. v. Smith*, 119 F.3d 888, 890 (9th Cir. 1941). Plaintiff seeks conversion damages in the amount of $1,800. ECF No. 24-1 at 19. However, as previously noted, the Rate Card submitted by Plaintiff indicates that, for an establishment like Defendant's with a 50-person capacity, the proper sublicensing fee is $900. Therefore, Plaintiff is entitled to $900 in damages for conversion.

### E. The Court Awards Partial Costs and Denies Fees

Costs and reasonable attorney's fees are recoverable under 47 U.S.C. § 605(e)(3)(b)(iii). District courts must calculate awards for attorney's fees using the "lodestar" method. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001) (citing *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir. 1996). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Id*. The party seeking an award of fees should "submit evidence supporting the hours worked and rates claimed," and if the evidence is lacking, "the district court may reduce the award accordingly." *Hensley v. Eckerhard*, 461 U.S. 424, 433 (1983).

"In determining a reasonable number of hours, the Court must review detailed time records to determine whether the hours claimed by the applicant were unnecessary, duplicative or excessive." *Defenbaugh v. JBC & Assoc., Inc.*, No. 03-0651, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)). Where there is a lack of opposition to a party's motions, or where the instant action is routine or substantially similar to prior actions brought by the same attorney, a court may find requests for attorney's fees excessive. *E.g.*, *Owen v. Brachfeld*, No. 07-4400, 2008 WL 5130619 (N.D. Cal. Dec. 5, 2008) (where counsel requested reimbursement for a total of 8.9 attorney hours for preparing a summary judgment motion, the court awarded only half the requested fees because defendants did not oppose the motion and the drafting document was "a matter of course in his practice" and "almost identical to that filed in connection with a similar motion"); *Sanchez v. Bank*

8
Case No.: 11-CV-01333-LHK
ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

*of Am.*, No. 09-5574, 2010 WL 2382347, at *5 (N.D. Cal. June 10, 2010) (in calculating attorney's fees, the court reduced the number of reasonable hours from 89.8 to thirty, in light of the fact that defendant had "defended itself in near-identical prior actions by other plaintiffs" represented by the same attorney).

In this case, Plaintiff's counsel first seeks recovery of $1038.98 in costs, including $500 for investigation, $350 for the complaint filing fee, and $188.98 for service of process charges. *See* Declaration of Plaintiff's Counsel Re Attorneys [sic] Fees ("Counsel's Declaration"), ECF No. 24-1, Ex. B at 4. Plaintiff submits no records supporting its request for investigation costs, and the invoice attached to the Counsel's Declaration suggests that service of process may have cost only $60. *See id.*, Ex. B-1. Without clearer evidence supporting Plaintiff's allegations of recoverable costs, the Court will only allow reimbursement for the $350 complaint filing fee.

Plaintiff additionally seeks $3,962.50 in attorney's fees. In support of its request, Plaintiff's counsel submitted a declaration and a chart describing the services rendered and hours billed. However, counsel's declaration indicates that the chart is not based on billing records, but a "reconstruction" based on the file and created long after services were rendered for the purpose of justifying an award of attorney's fees. *See* Counsel's Declaration at 2 (explaining the lack of any "computerized time sheets or electronic legal billing software," by noting that "in light of our routine handling of these types of matters, we are extremely capable of reconstructing an accurate outline of our billable time on this file."). *Id*. According to the declaration, billable hours are broken down as follows:

    a.   Attorney = 8.8 hours at $300.00 per hour = $2640.00

    b.   Paralegal = 2.1 hours at $150.00 per hour = $315.00

    c.   Administrative Assistant = .1 hours at $75 per hour = $7.50

*See id.* at 4.

Without actual billing records, however, the Court gives little weight to these figures. *See Zynga Game Network Inc. v. Erkan*, No. 09–3264, at *2, 2010 WL 3463630 (N.D. Cal. Aug.31, 2010) (denying motion for attorney's fees where plaintiff failed to attach "actual billing records").

Furthermore, counsel has not shown that his alleged billing rates are reasonable in this District. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (in determining the prevailing market rate, "generally, the relevant community is the forum in which the district court sits"). Counsel states: "Our rates for legal, administrative and paralegal time are well within the guidelines of the prevailing market rates within Los Angeles County and the United States." Counsel's Declaration at 2. Los Angeles County is in the Central District of California, while this Court is located in the Northern District of California.

That error and others suggest that the pleadings submitted in this case are boilerplate documents. For example, Plaintiff's counsel's chart references an initial demand letter sent to "Defendant Christopher J. Trimble," while the Defendant in this case is Pete Be. *See id.* Another declaration submitted by Plaintiff's counsel to the Court identifies the defendants as "James B. Johring, Jodi Ann Montes and Big Jim's Grill." ECF No. 19 ¶¶ 1-2.

In addition, the motion for default judgment cites the defendant's establishment's "90-person capacity" and "five large television screens," but the figures offered by Plaintiff's investigators indicate a 50- or 75-person capacity and three television screens. Furthermore, counsel's own assertions indicate that this matter is "routine." *See* Counsel's Declaration at 2 ("My firm routinely handles the civil prosecution of commercial signal piracy claims on behalf of Joe Hand Promotions."); ("In light of our routine handling of these types of matters, we are extremely capable of reconstructing an accurate outline of our billable time on this file.").

Given the "routine" nature of counsel's work on this matter, the lack of opposition to Plaintiff's motions, and the boilerplate nature of the pleadings, the Court is reluctant to allow recovery for 8.8 billable attorney hours at a rate of $300 per hour. Furthermore, counsel has provided no documentation to justify recovery of attorney's, paralegal or administrative fees, such as a curriculum vitae or resume, billing and cost records (not merely a reconstruction of services and hours long after the fact), or other relevant information. *See Joe Hand Promotions, Inc. v. Tu Minh Nguyen,* No. 10-3504, 2011 WL 1642306, at *4 (N.D. Cal. May 2, 2011); *Joe Hand Promotions, Inc. v. Nguyen*, No. 10-02536, 2011 WL 704441, at *3 (N.D. Cal. Feb. 21, 2011). Unless additional documentation supporting Plaintiff's calculation of costs and attorney's fees is

10

submitted by November 9, 2011, Defendant is ordered to pay only $350 for the complaint filing fee.

### IV. ORDER

For the reasons detailed above, Plaintiff's motion for default judgment is GRANTED. Judgment shall be entered in favor of Plaintiff Joe Hand Promotions, Inc. and against Defendant Pete Be, d/b/a Da Kine Café, in the amount of $2,900 in damages and $350 in costs. Plaintiff may submit an affidavit of attorney's fees and costs by November 9, 2011. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 26, 2011

_____
LUCY H. KOH
United States District Judge